# William Thompson *v.* McGill and Conn.

A vendee of land, holding a mere bond for title, and not having paid the purchase money, has not such an interest in the land as is the subject of a judgment lien or of seizure and sale under an execution at law; but where the vendee, the vendor of the land and the judgment creditor (who were the only persons that could object to such a proceeding) were all present and assented to the sale, it was held by the court, that the judgment creditor could not be heard in equity after electing (although in an irregular manner) to pursue his lien at law; and the judgment creditor was decreed to convey the legal title to the land so sold to the purchaser at such sale.

The bill in this case states that in 1837 complainant was owner of lots fifty-two and fifty-five, in the town of Kosciusco, and that he sold them to the defendant, McGill, for the sum of four thousand dollars, of which the sum of one thousand was paid in cash, and the remainder was payable in two equal annual instalments, for which McGill gave his two notes, payable on the first of January, 1838, and first of January, 1839.. Complainant did not make a title to the lots, but gave him a bond for title on the payment of the purchase money. On the note first due complainant commenced suit and obtained judgment, on which execution was issued and levied on the property of McGill, who gave a forthcoming bond with the defendant Conn as his surety. That bond was forfeited, execution issued on it and was paid except two hundred dollars; to pay which last named sum the said lots were sold. The defendant Conn became the purchaser of the lots; and when the sale was opened, and during its continuance, the sheriff proclaimed that he only sold McGill's right in the lots, and sold subject to the claim of complainant for fifteen hundred dollars, due by the note falling due in January, 1839. Complainant also gave similar notice; of all of which circumstances and facts Conn, at and before his purchase, had notice. On the note last falling due, complainant brought suit, obtained judgment, and an execution returned *"nulla bona,"* and has no means of collecting his debt

34*

but by prosecuting his lien on the land sold. Conn claims the lots by virtue of the purchase under the first execution. The bill prays for a sale, &c.

The answer of Conn admits the facts stated in the bill in relation to the sale to McGill, the rendition of the first judgment and the purchase under it of the premises by Conn; but says "if any notice of complainant's pretended lien was given at the time of the sale or previously, he has no recollection of it, does not believe it, and calls for proof. It also states that complainant, "so far as respondent knows or believes, remained silent as to any lien he might have;" "and respondent purchased the lots without any knowledge or belief that complainant would have any further claim thereon."

Andrew McGill's deposition states that at the time of the sale of the lots he or some other person gave public notice that there was a balance of the purchase money then due upon the lots, for which they would be held liable. He states that there is yet due of the original purchase money the sum of fifteen hundred dollars. He also says that "he is not certain that Conn knew that any part of the purchase money was due until the day of sale, when the fact was made public that there was a balance due.

Thomas H. Rogers, sheriff of Attala county in 1839, testifies that he sold the lots in controversy to Conn; that at the time of sale he stated that he sold nothing but McGill's interest in the lots, and that there was "some statement made as to a balance of the purchase money being due; does not recollect who made this statement, but believes he did," and that purchasers must judge for themselves. Witness heard Thompson make the statement aloud that there was a part of the purchase money unpaid.

John B. Logan was present at the sale, and heard McGill cry out aloud, as if he wished to warn the crowd, that there was a a balance of fifteen hundred dollars still due on the land; does not know whether Conn was present and heard McGill's declarations or not.

James T. Simms states, that he was present at the sale, and went to where they were crying the lots, intending to bid for them himself, but McGill told him if he did he would have fifteen hundred dollars more to pay.

WM. YERGER for complainant.

In this case I am not sure but the better course would have been to have excepted to the answer for insufficiency, inasmuch as the defendant, instead of admitting or denying whether notice was given of complainant's lien, states that he has no recollection of it. Now, whether notice were given or not, which came to defendant's hearing as the bill charges, was a fact within his immediate knowledge, and should not have been answered evasively, but positively. Story's Equity, 654, 655.

Where a bill makes an allegation of a fact, which if true must be within the knowledge of the defendant, he should respond to it positively; if the answer is equivocal, the bill will be taken as true. 3 A. K. Marsh, 6.

A court will not compel a vendor to convey to the purchaser at execution sale, even on payment of the whole purchase money, where the execution debtor had only a bond for title, or an agreement to convey on payment of purchase money. Harper's Eq. R. 184.

A purchaser at a sheriff's sale buys subject to the rule, *caveat emptor.* McGill had no title to the property which could be sold under execution at law. The legal title was still in complainant, and could not have been divested out of him by any mode until the purchase money was paid. 2 Johns. Ch. R. 312; 1 Bibb 306; 1 A. K. Marshall 174; 1 Ham. R. 314; 1 Yerger 79; 17 Johns. R. 350; 1 Johns. Ch. R. 52; Harper's Eq. 164; 1 Am. Eq. Dig. 480, sec. 26.

This case presents no kind of doubt, unless it grow out of the fact that complainant was present and procured the sale, and thereby that defendant was defrauded. So far from any fraud in the case being proved, the reverse appears true, as the complainant and defendant in the execution, and the sheriff, all gave public notice, which defendant does not deny came to his knowledge, of the claim of complainant, but only that he has no recollection of it. The statement in the answer, that "respondent purchased said lots for about the price of two hundred dollars, without any knowledge or belief that complainant would have any further claim thereon, is no denial of knowledge that there was a part of the purchase money unpaid; it merely alleges an ignorance on de-

fendant's part of the law of the case, not of the facts. That this is all he meant is evidenced by the foregoing portion of his answer, in which he says, "he has no recollection that any notice was given at the sale of the pretended lien of complainant."

The question at issue has been decided in New York, with the exception that the facts in this case are stronger in favor of the complainant than they were there. In Shotwell *v.* Murray, 1 John. Ch. R. 512, the rule is thus laid: "A sale under a second or junior judgment is not of itself a waiver of the plaintiff's rights under a first or elder judgment," not even though he be present at the sale, giving directions, and remain entirely silent about the first judgment, or any intention to enforce it." See also 2 Cowen, 248; 2 Johns. Ch. R. 125. In this case the defendant was a defendant in the execution under which he bought, and was bound at any rate to pay it. The legal title to the lots was in complainant, which he knew. The complainant, and the sheriff, and the co-defendant, McGill, original vendee, all gave public notice of the claim of complainant upon the land. Under these circumstances we take it to be the law, that the defendant shall take nothing by his purchase, he not showing himself to be an innocent purchaser in the language of the books.

Lea and Lea for defendants.

Complainant claims a lien on the lots sold for the purchase money yet unpaid, being fifteen hundred dollars. Defendant Conn objects on the grounds,

First. That defendant had no notice of complainants' lien. Two or three witnesses for plaintiff prove that at the sheriff's sale some one said something about some sort of incumbrance; notice is not brought home to Conn, and he expressly denies that he had any notice; and this is according to the probability of the case, judging from the fact that complainant allowed Conn to make considerable improvements on the lots, without giving him notice of said lien, as stated in Conn's answer: Conn would not have made said improvements if he had been apprised of complainant's lien. There is no pretence in this case that any other than actual notice was given to Conn. Then by reference to 15 Petersdorf Abridgement, 311, it will be seen that the notice was not sufficient

to affect Conn's conscience. "To constitute a binding notice, it must be given by a person interested in the property." 6 John. Ch. R. 166; 1 John. Ch. R. 354; 2 Atk. 83.

Second. That, if mistaken as to the foregoing defence, defendant Conn having paid the amount of the execution under which the land was sold, (as is proven by McGill's deposition, and confessed in complainant's answer to cross bill,) as surety, that he now stands in the place of complainant, so far as that judgment is concerned, towards the principal, McGill; and the judgment which Conn paid, being older than that under which complainant claims, he (Conn) had a prior lien on the lots, if subject to the satisfaction of both.

The CHANCELLOR.

This case has proved with me to be one of great doubt and difficulty, resulting from its novelty, and the entire absence, so far as my researches have gone, of any adjudged case having the remotest analogy to it. I must endeavor to settle it, therefore, upon the general principles and analogies of the law.

If application had been made to this court, to prevent the sale under execution, I should have had no hesitation in awarding an injunction, because nothing can be clearer upon either principle or authority than that a vendee of land holding a mere bond for title, and not having paid the purchase money, has not such an interest as is the subject of a judgment lien, or of seizure and sale under an execution at law. But in this case the only persons who could raise that objection, viz. Thompson and McGill, the vendor and vendee, seem tacitly, if not expressly to have waived it and elected by their acts to consider the interest of McGill in the lots as vendible under execution. It is clear, therefore, that Thompson cannot in this controversy be heard to say that the sale which was thus made under his own judgment, at his instance, and by his procuration, was illegal. This would be to minister to a selfish caprice, and to allow him to hold out an act as legal, when inducements of money were offered and received, and to then turn round and declare it illegal, and thus make the same property perform the same office to the fraud and detriment of confiding bidders and purchasers. The sale then having been made, and the complain-

ant not being at liberty to question its validity, the enquiry is, what title under the circumstances of the case is to be considered as having passed under that sale, and what was the effect of it, upon the complainant's lien for the remainder of the purchase money. The lots were levied on by the plaintiff's execution, obtained upon a note, given as security for part of the purchase money; the proceeding was therefore in substance, one to enforce the lien which the vendor had obtained, and thus to subject the lots to the payment of the purchase money; and although it was an irregular mode of attaining that end, yet if the only parties interested assented thereto, they at least are bound by it. Suppose the complainant had filed his bill in this court and obtained a decree of sale to enforce his lien for that part of the purchase money upon which his judgment was founded, and under which the sale was made, it will not be pretended that after a sale, under such decree, the complainant could have pursued the lots in the hands of the purchaser, upon the pretext that his lien still continued for the remainder of the unpaid purchase money. I think the same consequences must follow the mode which the complainant elected to carry out his lien, although variant in form. I know of no principle or rule of law that will allow the same property to be twice sold, either to the same or to different purchasers, for the payment of the same identical debt. This would be a new mode of converting a lean and scanty pledge, into a most ample security; a security of one hundred dollars might be thus made adequate to the payment of a hundred thousand; for I can perceive no limit to such a process. Suppose the complainant is now allowed to subject these lots under a decree of this court, he will then not only have obtained all the security for which he contracted, but will have pocketed with impunity, and without any consideration whatever, the money which Conn paid at the execution sale for the same property, and on the same debt. This would be to allow the complainant to take a fraudulent advantage of his own conduct. The extent of the complainant's right, was to subject the land to the payment of his purchase money, and having once done that, he cannot be allowed to repeat the process, to the prejudice of a *bona fide* purchaser. I think that the interpretation which equity should place upon the conduct of the complainant, is, that when

William Thompson *v.* McGill and Conn.

he elected to subject the lots at law, to the payment of his purchase money, he consented to waive any lien thereon for the remainder of the unpaid purchase money, and to surrender up the legal title to whosoever should become the purchaser at such sale. It is in evidence that the complainant was present at, and assenting to that sale.

I attach no consequence whatever to the question of whether Conn was or was not advised that there was a balance of the purchase money unpaid; it was sufficient that he looked to the legal effect of the sale. Even if the question of notice was important, I should much doubt whether it was sufficiently proven. The testimony to that point is vague and unsatisfactory. Let a decree be drawn dismissing the original bill, and compelling the complainant therein to convey the legal title to the complainant in the cross bill.